# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

BILLY DEE WILLIAMS,

    Plaintiff,

    v.         Case No. 03-C-586

OFFICER M. WILKINSON, and
OFFICER FALK,

    Defendants.

ORDER DENYING THE PLAINTIFF'S MOTION FOR AN
EXTENSION OF TIME (DOC. # 19) AND DENYING THE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (DOC. # 15)

    The plaintiff, Billy Dee Williams, originally filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, in Kenosha County Circuit Court. (Notice of Removal at 1). The defendants removed the action to this court on June 30, 2003. *Id.* The plaintiff was permitted to proceed on Fourth Amendment claims that the defendants, Officer M. Wilkinson and Officer Falk, used excessive force in his arrest. (December 29, 2004, Order).

    The defendants filed a summary judgment motion on August 14, 2004. After providing the plaintiff with the required notice, as the court directed in its December 29, 2004, Order, they renewed their motion on January 3, 2005. However, the plaintiff failed to file a timely response. On April 5, 2005, the court notified the plaintiff by letter that he would be permitted to file any response to the defendants' motion by May 4, 2005, and further warned him of the consequences of failing to do so.

The plaintiff allowed the additional time he was granted to lapse without filing a summary judgment response. Thereafter, on May 10, 2005, he sought reconsideration of the October 29, 2003, order denying his request for appointed counsel.

In denying this request, the court noted that in September 2003, the plaintiff requested appointed counsel and that the request was denied without prejudice. (October 29, 2003, Order). At that time, the plaintiff was advised to provide the names of at least three attorneys he has contacted but who declined to accept the case. *Id.*; *see also* May 17, 2005, Order. The May 2005 request for the appointment of counsel and motion for reconsideration do not include the names of any such attorneys and thus were denied. (May 17, 2005, Order).

The plaintiff now seeks an extension of time to respond to the defendants' motion for summary judgment. (Motion to Extend at 1). He states that in response to the May 17, 2005, Order, he has worked diligently to secure counsel, but has been unsuccessful. *Id.* The plaintiff further states that he does not understand legal "jargon." *Id.* Regardless, the plaintiff has known the substance of the defendants' motion for more than ten months. Yet, to date, he has not responded to the defendants' motion and apparently, only recently endeavored to secure counsel. For these reasons, the court finds that the plaintiff has failed to demonstrate that good cause for a further extension of time. If anything, he has suggested that he is intent on delaying this case. Therefore, the plaintiff's motion will be denied.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

2

Case 2:03-cv-00586-CNC    Filed 06/28/05    Page 2 of 9    Document 20

242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial - the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law - is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also Celotex Corp.,* 477 U.S. at 324; Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

The plaintiff's complaint is sworn. Therefore, the court will construe it as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

The following is undisputed. Defendants Peter Falk and Michael Wilkinson are police officers employed by the City of Kenosha Police Department. (Affidavit of Peter Falk [Falk Aff.] ¶ 1; Affidavit of Michael Wilkinson [Wilkinson Aff.] ¶ 1). On April 1, 2001, the

3

defendants assisted the Kenosha County Controlled Substance Unit with a controlled drug buy. (Falk Aff. ¶ 2; Wilkinson Aff. ¶ 2). The defendants were informed that a black male in his twenties with a large build would be coming in a vehicle with Illinois license plates. (Wilkinson Aff. ¶ 3). At approximately 1:10 p.m., the defendants were notified that the suspect was in the area. (Wilkinson Aff. ¶ 4). The suspect, later identified as Billy Dee Williams, the plaintiff, was reportedly going to sell and deliver approximately 1/4 kilo of crack cocaine and then be arrested. (Falk Aff. ¶ 3).

The defendants were in an unmarked squad car. As the plaintiff's car passed by the squad car, the plaintiff made eye contact with Wilkinson and held his gaze as he drove by looking over his shoulder. (Wilkinson Aff. ¶ 5). The defendants followed the plaintiff and soon became involved in a high-speed chase. (Falk Aff. ¶ 4; Wilkinson Aff. ¶ 6). The plaintiff ran a stop sign and accelerated rapidly, nearly striking a car. Wilkinson activated the red/blue lights on their squad car and they proceeded to follow the plaintiff. (Wilkinson Aff. ¶ 7). The plaintiff traveled westbound on highway 50, failing to stop for a stoplight, weaving in and out of traffic, and driving on the shoulder at speeds up to 65 miles per hour. (Wilkinson Aff. ¶ 8). The car chase ended when the plaintiff's car blew out both right-side tires after driving over the curb at the I-94 overpass. (Falk Aff. ¶ 4; Wilkinson Aff. ¶ 9).

The plaintiff exited his car and started to run. (Falk Aff. ¶ 5; Wilkinson Aff. ¶¶ 10-11; Notice of Removal ¶ 4, Complaint [Complaint] at 1). The plaintiff ran on the west shoulder of the on-ramp with a plastic baggie in his hands and he was throwing the yellowish rock-like substance from it, later identified as crack cocaine. (Falk Aff. ¶ 5; Wilkinson Aff. ¶¶ 10-11). Falk attempted to cut off the plaintiff's path by pulling their unmarked squad car in front of him, but the squad car jumped the curb and slid on wet grass down an embankment

4

into some water in the ditch. (Falk Aff. ¶ 6; Wilkinson Aff. ¶ 12). Wilkinson exited the squad car, and yelled for the plaintiff to "Stop! Police! Get on the ground!" The plaintiff continued and began trying to climb up the other side of the embankment. (Falk Aff. ¶ 7; Wilkinson Aff. ¶ 13). Wilkinson continued to yell, "Police! Stop!" However, the plaintiff failed to stop. (Wilkinson Aff. ¶ 14). Falk retrieved the baggie containing the crack cocaine. (Falk Aff. ¶ 8).

Wilkinson tackled the plaintiff as soon as he made contact with him. The plaintiff turned and punched Wilkinson with a closed fist in the nose and mouth, causing Wilkinson great pain. Falk observed the plaintiff punch Wilkinson in the face. Wilkinson's nose and mouth began to bleed. (Falk Aff. ¶ 9; Wilkinson Aff. ¶ 15). Wilkinson grabbed the plaintiff around the neck with his left arm to attempt to gain control of him. He sprayed a one-second burst of pepper spray in the plaintiff's face with no apparent effect. (Wilkinson Aff. ¶ 16).

The plaintiff again punched Wilkinson, hitting him in the left bicep. Wilkinson struck the plaintiff in the face with a closed fist, again trying to gain control of him. (Wilkinson Aff. ¶ 17). The plaintiff was twisting, trying to turn around, throwing his elbows back and striking the side of Wilkinson's arms. (Wilkinson Aff. ¶ 18). The plaintiff reached around and grabbed Wilkinson's thumb and pulled it back in an attempt to remove Wilkinson's arm from around him. This caused Wilkinson great pain in the hand and made it feel numb. (Wilkinson Aff. ¶ 19). During these events, Wilkinson yelled at the plaintiff to put his arms behind his back and identifying himself as a police officer. (Wilkinson Aff. ¶ 20).

Falk arrived at Wilkinson's location and assisted him by delivering two punches to the plaintiff's face as the plaintiff continued to resist efforts to gain control of him. (Falk Aff.

5

¶ 10; Wilkinson Aff. ¶ 21). Wilkinson was bleeding from the nose and mouth, and having difficulty breathing. All Wilkinson could do was attempt to bear hug the plaintiff's head to keep control of him. (Wilkinson Aff. ¶ 22). After a short while, it appeared that the plaintiff was winded and tired. Wilkinson was able to get one of the plaintiff's hands behind his back. Falk moved the plaintiff's other hand behind his back, and the defendants handcuffed the plaintiff. (Falk Aff. ¶ 11; Wilkinson Aff. ¶ 23).

What happened after the plaintiff was handcuffed is disputed. According to the defendants, after the plaintiff was handcuffed, they, along with an off-duty Milwaukee Police Officer who arrived on the scene to help, kept the plaintiff on the ground until other squad cars arrived. (Falk Aff. ¶ 12; Wilkinson Aff. ¶ 24). The defendants aver that they used no more force than was reasonably necessary to overcome the plaintiff's resistance and take him into custody. (Falk Aff. ¶ 14; Wilkinson Aff. ¶ 29). According to the plaintiff, after he was handcuffed, he was "beaten severely to the face." (Complaint at 1). The plaintiff's head lay beneath the water and the plaintiff was "suffering from severe breathing along with being drowned" due to the excessive force of the officers. (Complaint at 2).

It is undisputed that following the incident, Kenosha Fire Department rescue responded to the scene and assisted both the plaintiff and Wilkinson. (Wilkinson Aff. ¶ 25). The plaintiff was escorted to a medical unit and Falk helped other officers located the crack cocaine which the plaintiff had thrown out of the bag. (Falk Aff. ¶ 13; Wilkinson Aff. ¶ 26). The plaintiff was treated at a hospital for "the contusion to his left eye." (Complaint at 2). Wilkinson received medical attention for his left hand and thumb. At the hospital, Wilkinson was told he had a broken thumb and was thereafter seen by a surgeon. (Wilkinson Aff. ¶ 27). The injury to Wilkinson's thumb, caused when the plaintiff bent it backwards, caused him to

6

miss three or four weeks of work. (Wilkinson Aff. ¶ 28). Williams was convicted in federal court of possessing 50 grams or more of cocaine based with intent to sell, distribute or dispense and sentenced to federal prison. (Affidavit of Kevin P. Reak, Ex. A).

Claims that police officers used excessive force in effectuating an arrest must be analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Patterson*, 65 F.3d 68, 70 (7th Cir. 1995). The court must determine whether the officers' actions were objectively reasonable "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. The court must balance the substance of the Fourth Amendment intrusion upon the individual against the governmental interest in determining reasonableness. *Id.* at 396. Factors for the court to consider include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The undisputed facts establish the following. The defendants had probable cause to arrest the plaintiff. The plaintiff fled the police by car, driving in a reckless manner, before fleeing on foot. The plaintiff actively resisted the officers in a manner causing great pain and injury to defendant Wilkinson. He was not subdued by the use of pepper spray. Ultimately, the plaintiff was convicted of possession of a substantial amount of cocaine.

Considering the *Graham* factors, there is no dispute that the use of force by the defendants prior to the handcuffing of the plaintiff was reasonable. No reasonable trier of fact

7

could conclude otherwise. However, there is a dispute of material fact concerning the amount of force used after the plaintiff was handcuffed. A reasonable trier of fact could conclude, on the basis of the plaintiff's testimony, that he was beaten and had his face submerged in water after being subdued and handcuffed. The record does not suggest that the plaintiff posed a threat to the public or officers, or was actively resisting or trying to escape after being handcuffed or while being held to the ground by the defendants and an off-duty Milwaukee Police officer.

The defendants argue that they are entitled to qualified immunity. (Defendants' Brief at 7-8). When government officials perform discretionary functions, they are entitled to a qualified immunity defense that shields them from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-step analysis is used to determine whether qualified immunity is warranted in a particular case. *Saucier v. Katz*, 533 U.S. 194 (2001).

The threshold question is whether "[t]aken in the light most favorable to the party asserting the injury," the "facts alleged" show the officer's conduct violated a constitutional right. *Id.* at 201. In the event that no constitutional right would have been violated if the allegations were established, there is no need for further analysis of the qualified immunity issue. *Id.*

However, if a violation could be demonstrated based on a favorable view of the parties' submissions, the analysis proceeds to the second step which requires that the court determine whether the right was clearly established. *Id.* Such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "The

8

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

At the second step, "if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." 533 U.S. at 202 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")).

The plaintiff's allegations concerning the defendants' conduct after he was handcuffed assert a Fourth Amendment violation. Thus, the court looks to whether the right at issue was clearly established. Severely beating a subdued handcuffed pretrial detainee while submerging his head under water would clearly be outside the reasonableness requirements of the Fourth Amendment. Because a genuine material issue remains concerning the defendants' conduct in relation to the plaintiff's arrest, the court cannot conclude at this time that the defendants are entitled to qualified immunity. Therefore,

**IT IS ORDERED** that the plaintiff's motion for an extension of time to respond to the defendants' motion for summary judgment (Doc. # 19) is **denied**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Doc. # 15) is **denied**.

Dated at Milwaukee, Wisconsin, this 28th day of June, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U.S. District Judge